UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAPHAEL BARRETO,

        Petitioner,

    v.

M. MARTEL, Warden,

        Respondent.

_____/

No. C 08-2008 MHP (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

    This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

    In 2005, a Santa Cruz Superior Court jury found Petitioner guilty of eleven counts of sex offenses against his step-daughter.[1] The trial court sentenced Petitioner to forty-four years, with a consecutive term of fifteen years-to-life, in state prison. Petitioner appealed. The California Court of Appeal for the Sixth Appellate District affirmed the judgment (Ans., Ex. F at 1), the California Supreme Court granted his petition for review, and then dismissed it (id., Ex. H).

    The state appellate court summarized the facts as follows:

[Petitioner] was accused of molesting his stepdaughter M. from 1995, when she was six years old, to June 2000. When M. was five years old, [Petitioner], at age 50, married M.'s mother, who was then 25. [ ]

At the time of trial, M. was 15 years old . . . She testified that when she was six, she was watching television on the couch when [Petitioner] came and sat down next to her. He gave her a hug and put his hand down her pants, moving it around on her vagina. M. testified that she "felt kind of strange" about this but did not say anything to [Petitioner] or anyone else because she "didn't know it was wrong."

M. testified that [Petitioner] touched her vagina with his hand "many other times." She said, "Sometimes it would be twice a week or sometimes it would be like once or twice a month." She testified that she did not remember "anything specific" about these incidents. She said, "nothing about them stands out." She could not describe them "one-by-one" because "there [were] so many of them."

M. testified that when she was nine years old she was on the couch and [Petitioner] approached her "like he wanted to touch me." She said that she pushed him away and "just let him know that I didn't want to." He grabbed her feet and pulled her toward him. He pulled down her pants and touched her vagina with his hand. His fingers penetrated her vagina. He grabbed her hand and placed it on his penis over his pants. She testified, "He wanted me to touch it, and I pulled my hand back, and he just grabbed it and put it back." He then pulled her pants lower and put his mouth on her vagina. M. testified that she "kept pushing him away . . . after a while I told him that I had to go to the bathroom, and he let me go and he left."

At some point, M. told [Petitioner] that she was going to tell her mother about these molests. She testified that "he said, you know, not to, because she already [knew] about it and didn't care. And she wasn't going to do anything." M.'s mother had two children with [Petitioner] during this time period.

M. testified that a "couple [of] times, two or three times" [Petitioner] came into her bedroom in the early morning to wake her up. Her mother would be drinking coffee or having breakfast. [Petitioner] would "cuddle up" next to M. in bed. She said, "my back would be to him, and he would put his hands underneath my shirt and start touching me." She testified that "he was like putting pressure on me, because usually I'd try to, you know, move away from him, go to the other side of the bed. And he'd just, you know, push-like put pressure on me to stay there."

M. testified that the last time [Petitioner] molested her she was nine years old. She and [Petitioner] were alone in their apartment and she had just taken a shower. [Petitioner] was wearing pants and a t-shirt. M. was walking to her room from the bathroom wearing a towel. [Petitioner] tried to grab her and lift her up. She ran to her room and tried to close the door but [Petitioner] opened it. She testified that [Petitioner] "pushed me on to the bed and he was trying to touch me and, like, he took my towel off and we were struggling." She continued to squirm, jumped off her bed, and ran to her parents' bedroom which had a door that locked. [Petitioner] ran after her. She jumped on the bed to get away from him. [Petitioner], now wearing only his boxer shorts, pushed M. down on the bed and "tried [to] put his hand in my vagina." He put his mouth on her vagina. She felt his penis touch her vagina for "a split second." M. thought "that he was actually going to rape me or something." This incident was different from the previous lewd acts because, as M. testified, [Petitioner] "was like kind of fighting with me instead of like

2

pretending to be nice about it."

A few weeks later, M. told her friend Theresa about [Petitioner's] behavior. Theresa told M.'s mother. After that, M.'s mother did not leave her alone with [Petitioner] and "things kind of settled down" in the household. When M. was in eighth grade she was having problems with her mother and went to counseling. There she disclosed that she had been molested.

(Ans., Ex. F at 1–3.)

As grounds for federal habeas relief, Petitioner alleges that (1) his rights to due process and equal protection were violated by the admission of uncharged acts evidence under California Evidence Code § 1108, which is unconstitutional on its face and as applied to him; (2) his confession was involuntary and the product of a violation of his <u>Miranda</u> rights; (3) his rights to due process and notice of the charges were violated by the failure to give fair notice on counts 8 and 9 against him in that the trial court erred in permitting the pretrial amendment of count 9 and overruled objections to the use of new generic testimony on the count 8 offense; (4) his right to due process was violated by the jury instructions which lowered the prosecution's burden of proof; (5) his right to due process was violated by the failure to give a unanimity jury instruction; (6) his right to due process was violated by the use of CALJIC 2.21.2 because it reduced the prosecution's burden of proof; (7) his rights under the Sixth Amendment were violated by the imposition of full consecutive terms on certain counts based on a finding made by the court rather than the jury; (8) the determination that the sentences on counts 2–5 and 9–11 were mandatory violated his right to due process; (9) the trial court's failure to impose a concurrent term on count 10 violated his right to due process; and (10) there was cumulative error.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

**1. Constitutionality of Evidence Code Section 1108**

Petitioner claims that Cal. Evid. Code § 1108, which allows the admission of evidence of prior sex acts, is unconstitutional on due process and equal protection grounds. (Pet., P. & A. at 2.) The state appellate court denied this claim on the grounds that the California Supreme Court had rejected identical challenges to the constitutionality of section 1108. (Ans., Ex. F at 6.)

At trial, two prosecution witnesses, Petitioner's daughter and great-niece, testified that Petitioner had molested them when they were young girls. (Id. at 4–5.) Their testimony was allowed under California Evidence Code section 1108(a), which states that "[i]n a criminal

4

1   action in which the defendant is accused of a sexual offense, evidence of the defendant's

2   commission of another sexual offense or offenses is not made inadmissible by Section 1101,

3   if the evidence is not inadmissible pursuant to Section 352 [which allows a trial court to

4   exclude evidence if its probative value is outweighed by its prejudicial effect]." (Id. at 6.)

5          The Due Process Clause has limited operation "beyond the specific guarantees

6   enumerated in the Bill of Rights." Dowling v. United States, 493 U.S. 342, 352 (1990).

7   State law violates the Due Process Clause only if "it offends some principle of justice so

8   rooted in the traditions and conscience of our people as to be ranked as fundamental."

9   Montana v. Egelhoff, 518 U.S. 37, 43 (1996). The Supreme Court has not found that

10  propensity evidence offends the Due Process Clause. Indeed, the Supreme Court has

11  expressly left open that very question. Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991).

12  Because it is an open question, it is not clearly established federal law that the admission of

13  propensity evidence violates due process.

14         Furthermore, courts have "routinely allowed propensity evidence in sex-offense cases,

15  even while disallowing it in other criminal prosecutions." United States v. LeMay, 260 F.3d

16  1018, 1025 (9th Cir. 2001). "California's Rule 1108 was modeled after the Federal Rules,

17  and contains an express requirement that courts balance the probative value of the evidence

18  against its prejudicial effect." Wolff v. Newland, 67 Fed. Appx. 398 (9th Cir. 2003).

19         With respect to the instant matter, because the Supreme Court expressly has left open

20  the question of the admission of propensity evidence, Petitioner's claim that the trial court's

21  admission of propensity evidence under section 1108 violated his constitutional rights is

22  without merit. Also, the above legal authorities contradict Petitioner's assertion that section

23  1108 is unconstitutional on its face, or as applied to him. Accordingly, Petitioner's claim is

24  DENIED.

25  //

26  //

27  //

28

**2. Miranda**

Petitioner claims that the admission of his confession to police violated his Fifth

Amendment rights against self-incrimination, as those rights are described in Miranda v.

Arizona, 384 U.S. 436 (1966). Specifically, Petitioner contends that his statements were not

voluntary, and, because of Petitioner's distraught mental state, the police should have

obtained an express waiver of his Miranda rights. (Pet., P. & A. at 5–6.)

The state appellate court summarized the relevant facts as follows:

> Detective Henry Montes testified that he interviewed [Petitioner] in Spanish
> shortly after [Petitioner] was arrested, on May 10, 2004, and again on May 12.
> The jury was provided with tapes, transcripts, and translations of these
> interviews. Before Detective Montes asked [Petitioner] any questions about
> the charged offenses, [Petitioner] said that he had had bad thoughts of little
> girls since he was very young. He said that he had touched little girls in
> Mexico but that he had never digitally penetrated them and he had never
> touched his own children. He admitted touching M. four or five times by
> brushing his hand on her. When asked if he could have made M. touch his
> penis, [Petitioner] told Montes "If she remembers, well, I don't know, I could
> have done it without being aware of it." Montes told [Petitioner] about M.'s
> description of the incident in which [Petitioner] pulled down M.'s pants and
> orally copulated her and asked [Petitioner] "Could that have happened?"
> [Petitioner] answered, "Yes, something could have happened . . . But . . .
> putting my mouth on her, that, that seems to be, more, difficult . . . But, maybe
> because one gets so crazed, don't you think?"
>
> Montes asked [Petitioner] about the incident in which M. came out of the
> bathroom in a towel. [Petitioner] said that that time he "was feeling that she
> wanted me to be there" so he caressed her and "gave her a kiss on her navel"
> and said "Sweetie, sweetie, I don't want to hurt you." [Petitioner] said that
> "that time was when she felt the rejection most." [Petitioner] denied trying to
> put his penis in M.'s vagina. [Petitioner] told Montes that M. was "extremely
> suggestive" with him and "entices [him] a lot." Throughout the interviews,
> [Petitioner] stated that M. was a truthful person but that he "couldn't have done
> all that." He said "I don't accept myself as I am."

(Ans., Ex. F at 4.)

Miranda requires that a person subjected to custodial interrogation be advised that he

has the right to remain silent, that statements he makes can be used against him, that he has

the right to counsel, and that he has the right to have counsel appointed. These warnings

must precede any custodial interrogation, which occurs whenever law enforcement officers

question a person after taking that person into custody or otherwise significantly deprive a

person of freedom of action. 384 U.S. at 444. The remedy for a violation of these

requirements is the suppression, at the subsequent trial, of the statements made incriminating the defendant in the crime about which he was questioned. Id. at 479.

A person subject to custodial interrogation can waive his Miranda rights. A valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the defendant. See United States v. Bernard S., 795 F.2d 749, 751 (9th Cir. 1986). The government must prove waiver by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168–69 (1986). To satisfy its burden, the government must introduce sufficient evidence to establish that under the totality of the circumstances, the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). A showing that the defendant knew his rights generally is sufficient to establish that he knowingly and intelligently waived them. See, e.g., U.S. v. Parra Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997) (recitation of rights in English and supervision of reading in Spanish, accompanied by officer's confirming that defendant understood his rights, sufficient to establish that defendant knew his rights and knowingly and intelligently waived them); U.S. v. Rodriguez-Rodriguez, 364 F.3d 1142, 1146 (9th Cir. 2004) (suspect suffering from mild or moderate heroin withdrawal who was "coherent and responsive" voluntarily waived his Miranda rights after they were read to him in English and Spanish). And although the burden is on the government to prove voluntariness, a waiver cannot be held involuntary absent official compulsion or coercion. See Colorado v. Connelly, 479 U.S. 157, 170 (1986); Parra Cazares, 121 F.3d at 1244.

"A state trial court's determination that a defendant knowingly and intelligently waived his Miranda rights is entitled to a presumption of correctness pursuant to section 2254(d)." Derrick v. Peterson, 924 F.2d 813, 823 (9th Cir. 1990). Accordingly, when reviewing such a determination, a federal habeas court must determine whether it is fairly supported by the record. (Id. at 824.)

7

Applying these legal principles to the instant matter, the Court concludes that the state court's determination was fairly supported by the record. The record indicates that Petitioner was read his rights in his native Spanish. Petitioner's responses indicate unequivocally that Petitioner understood his rights, including that he had the right to remain silent and have an attorney present during questioning. Such circumstances are substantially similar to those in Parra Cazares, cited above, where a recitation of rights in Spanish, accompanied by the officer's confirming that defendant understood his rights, was sufficient to establish that defendant knew his rights and knowingly and intelligently waived them. See 121 F.3d at 1244. In the instant matter, the recitation of his rights in Spanish and his assurances that he understood his rights indicates that Petitioner understood his rights. Such circumstances indicate that the trial court's determination was fairly supported by the record.

Petitioner's contention that the police should have obtained an express waiver because Petitioner was in a highly excited mental state is without merit. The significant question is whether, under the totality of the circumstances, Petitioner was aware of the nature of the rights being abandoned and the consequences of the decision to abandon them. As stated above, the record supports the trial court's determination that the totality of the circumstances indicates that Petitioner's waiver was knowing and voluntary. Furthermore, there being no evidence of any official compulsion or coercion, the Court cannot find the waiver involuntary. See Connelly, 479 U.S. at 170. Second, that Petitioner was in an excited mental state is insufficient in itself to render his waiver invalid. Petitioner must show that his excited mental state actually precluded him from giving a knowing and voluntary waiver. This he has not done. In fact, the circumstances in the instant action are similar to those presented in Rodriguez-Rodriguez, cited above. In that case, it was found that even though the suspect was suffering from mild or moderate heroin withdrawal, his answers were sufficiently "coherent and responsive" as to indicate that he voluntarily waived his Miranda rights after they were read to him in English and Spanish. 364 F.3d 1142, 1146 (9th Cir. 2004). In the instant matter, the record indicates that despite Petitioner's excited mental

8

state, his sufficiently coherent and responsive answers indicate that he understood his rights and knowingly and voluntarily waived them. The trial court's determination being fairly supported by the record, the Court must deny Petitioner's claim.

**3.      Counts Eight and Nine**

Petitioner claims that he was denied fair notice of the conduct underlying counts eight and nine resulting in a violation of his right to due process. As to count eight, Petitioner claims that the trial court erred by overruling a trial objection to the use of "generic testimony" given at trial in support of this charge, a charge of forcible lewd and lascivious conduct. As to count nine, Petitioner contends that the trial court erred when it allowed the pretrial amendment of this charge, also a charge of forcible lewd and lascivious conduct. (Pet., P. & A. at 8.)

The criminal charges against Petitioner underwent several revisions from the preliminary hearing through the trial. The first information contained several counts of forcible lewd acts based on allegations that on several mornings Petitioner crawled into bed with M. and molested her. After the preliminary hearing, the prosecutor filed an amended information which realleged those charges as <u>non-forcible</u> lewd acts. This amended information also contained a count of a forcible lewd act, based on allegations that Petitioner lay on top of M., and two counts of aggravated sexual assault. After the presentation of evidence at trial, the prosecutor filed another amended information, eliminating the aggravated sexual act charges. (Ans., Ex. F at 13–15.)

The state appellate court summarized the relevant facts and its ruling on Petitioner's claim regarding Count 8 as follows:

> Count 8 charged a violation of Penal Code section 288, subdivision (a), a non-forcible lewd act, between November 1, 1995 and June 1, 2000. As to this count, [Petitioner] argues that the trial court erred "in permitting argument and instruction . . . since there was no evidence of generic touchings to fill in gaps in the testimony until mid-trial. Requiring the defense to respond to these last-minute attempts to fill in gaps in the case without notice at the preliminary hearing or otherwise before trial violated . . . basic due process notice principles."

The evidence at the preliminary examination was that M. had said that on three or four occasions [Petitioner] would crawl into bed with her in the early morning and molest her. At trial, M. said that [Petitioner] had crawled into bed with her two or three times in the early morning. She also testified that there were many touchings involving skin to skin contact. When defense counsel moved for acquittal on one of the counts of section 288, subdivision (a), because M.'s trial testimony had reduced by one the number of these early morning incidents, the prosecutor argued that the evidence at the preliminary examination was that M. had said that there were "at least" three or four other incidents of improper touchings between 1996 and 2000. Defense counsel also objected on due process grounds to any charges "based on facts brought out at trial" that had not been proven at the preliminary examination. The trial court, having not read the [preliminary] examination transcript, reserved ruling but does not appear to have ruled on this issue. In closing, the prosecutor invited the jury to convict [Petitioner] of non-forcible lewd conduct based on the two or three early morning molestations or any of the "countless" other times that she testified at trial that [Petitioner] had touched her.

[Petitioner] challenges count 8 arguing that "there was no evidence of generic touchings to fill in gaps in the testimony until mid-trial." Respondent acknowledges that "Detective Johnson did not testify to these other touchings at the preliminary hearing." When M.'s trial testimony reduced the number of early morning touchings in bed, charged as non-forcible lewd acts, from three or four to two or three, the prosecutor was permitted to argue a third count based on M.'s generic testimony at trial. However, the difference between the evidence at the preliminary examination and the trial did not deprive [Petitioner] of due process as to count 8.

[Petitioner] argues that his defense at trial "was to rais[e] doubts as to the victim's ability to recall specific acts and to limit the number and nature of charges to three or four 288(a) offenses; there was also real room to doubt the victim's true ability to recall specific acts, since charges like penetration were pared away based on changing testimony at trial." This is not accurate. Defense counsel questioned whether what M. described fit the definition of "force" and read that definition to the jury. Counsel pointed out that although [Petitioner] did not defend himself against the charge of rape during his interview with Detective Montes, telling Montes, "I accept the charges. Whatever she says, I accept them," M.'s trial testimony was that there was no penile penetration. However, defense counsel said that [Petitioner] had admitted to what he had done and asked the jury to "Convict [Petitioner] of four counts of a lewd and lascivious act, but don't convict him of the things that he's not guilty of." These four counts would have included the first molest, charged as count 1, as well as counts 6, 7, and 8. Thus, [Petitioner] defense in no way depended on whether count 8 was tied to a specific incident or was generic in nature. [Petitioner] had sufficient notice of the nature of the charge to prepare his defense and [Petitioner] was not denied due process.

(Ans., Ex. F at 17–19.)

//

//

10

As to Count 9, the state appellate court summarized the relevant facts and its ruling as

follows:

> As ultimately numbered, count 9 charged a forcible lewd act. [Petitioner]
> argues that the evidence at the preliminary examination did not support an
> amendment to include this charge of a third lewd act during the final incident.
> We disagree. Detective Johnson testified at the preliminary examination that
> M. told her that after M.'s shower, wrapped in only a towel, M. met her
> stepfather, who was wearing clothes, in the hallway. He was "just standing there." She
> walked to her bedroom and, as she tried to close the door, he pushed it open. When he got
> into the room, he was wearing a t-shirt and boxer shorts. [Petitioner] then "took [M.] and
> pushed her down onto her bed to where she was laying on her back and he was laying on top
> of her." At this point M. was no longer wearing the towel. M. struggled with [Petitioner],
> told him to stop, and finally managed to get away, fleeing to the second bedroom. We
> disagree with [Petitioner's] assertion that "This terse description simply did not support a
> completed lewd act, or even really an attempted one." When considered with the other
> evidence presented at the preliminary examination, [Petitioner's] forceful and sexually
> charged conduct laying on top of this naked girl on her bed in his boxer shorts until she
> struggled free supported a violation of Penal Code section 288, subdivision (b), and the trial
> court did not err in permitting this amendment.
>
>     . . . .
>
> In his due process argument as to count 9 [a forcible lewd act], [Petitioner]
> complains of "the prosecutor's last-minute shuffling of theories to fit and shore
> up trial testimony, as needed." He argues, "there was simply no testimony at
> the preliminary hearing [as] to a vaginal touching in the second bedroom; either
> the prosecutor was permitted to add this theory before trial based on an
> unsupportable sparse description of a struggle in the first bedroom, then argue
> the count based on new trial testimony adding the vaginal touching."
>
> Although there may have been some variance between when [Petitioner]
> forcibly touched M.'s vagina during the towel incident, whether he did so in
> the first or the second bedroom, this difference hardly deprived [Petitioner] of
> notice of the nature of the charges against him or cause him to be unprepared to
> defend against count 9. As discussed above, [Petitioner] trial strategy was to
> concede the non-forcible counts and ask the jury to decline to convict him of
> the more serious charges on the theory that he had admitted to what he had
> done. Arguing one forcible count to conform to trial testimony on the theory
> that it occurred in the second bedroom rather than the first during essentially
> the same event did not deprive [Petitioner] of due process.

(Ans., Ex. F at 16, 19.)

This Court construes Petitioner's due process claims as allegations that the trial court

violated his Sixth Amendment right to be informed of the "nature and cause of the

accusation" against him. U.S. Const. amend. VI. "The [S]ixth [A]mendment requires, in

part, that an information state the elements of an offense charged with sufficient clarity to

apprise a defendant of what he must be prepared to defend against." Givens v. Housewright,

786 F.2d 1378, 1380 (9th Cir. 1986) (citation removed). A criminal defendant may be adequately notified of the charges by way of the information. See James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994). Other means given in advance of trial may also qualify. See Jones v. Smith, 231 F.3d 1227, 1238–39 (9th Cir. 2001). For example, in Jones, although the information did not allege premeditation, it was clear from the record that the petitioner was on notice well before trial that the prosecution sought to prove that he attempted to commit murder deliberately and with premeditation. See id.

Applying these legal principles to the facts of the instant matter, the Court concludes that Petitioner has not shown that he was deprived of his right to fair notice of the charges and evidence against him. As to count eight, Petitioner received notice of the charges and the evidence that would be adduced to support the charge. Specifically, the evidence presented at the preliminary hearing, and by the subsequent informations, put Petitioner on notice that the prosecutor sought to prove that he committed non-forcible lewd conduct based on allegations that he visited M.'s bed several times in the early morning. Specifically, the evidence presented at the preliminary hearing, and by the subsequent informations, put Petitioner on notice that the prosecutor sought to prove that he committed non-forcible lewd conduct based on allegations that he visited M.'s bed several times in the early morning. As to count nine, similar to the facts in Jones, Petitioner was put on notice of the charge as early as the preliminary hearing that the prosecution sought to prove that he committed forcible lewd conduct based on allegations that he lay on top of M.

Second, Petitioner has not shown that any alleged lack of notice prevented him from presenting an adequate defense. Petitioner's defense, as stated above, entailed admitting to the non-forcible acts, and asking the jury to not convict him of the forcible acts. A defense so constructed shows that Petitioner had fair notice that the prosecutor sought to prove that Petitioner committed forcible and non-forcible lewd acts on M. On such a record, the Court concludes that Petitioner has not shown that the trial court's accepting amended charges or overruling an objection to a charge violated Petitioner's right to fair notice in order to prepare

12

a defense.  Accordingly, Petitioner's claim is DENIED.

**4.–6.  Alleged Instructional Errors**

In his fourth, fifth, and sixth claims (labelled A, B, and C below), Petitioner contends that the given jury instructions were so flawed as to violate his due process rights.  (Pet., P. & A. at 9–14.)  The Court will address the three claims in turn.

**A.     CALJIC No. 2.50.01**

Petitioner claims that CALJIC No. 2.50.01, in combination with other instructions, lowered the prosecutor's burden to prove Petitioner's guilt beyond a reasonable doubt.  (Pet., P. & A. at 9.)  The state appellate court rejected this claim on state law grounds.  (Ans., Ex. F at 22.)  The state court concluded that the jurors understood their duty to apply a preponderance standard to their determination of a preliminary fact, and a reasonable doubt standard to all other determinations.  (Id.)

The trial court gave the jury the 2002 version of CALJIC No. 2 .50.01:

Evidence has been introduced for the purpose of showing that [Petitioner] engaged in a sexual offense on one or more occasions other than [that] charged in this case . . .

If you find that [Petitioner] committed a prior sexual offense, you may, but are not required to infer that [Petitioner] had a disposition to commit sexual offenses.  If you find that [Petitioner] had this disposition, you may, but are not required to infer that he was likely to commit and did commit the crime or crimes of which he is accused.

**However, if you find by a preponderance of the evidence that [Petitioner] committed a prior sexual offense or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.**

**If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether [Petitioner] has been proved guilty beyond a reasonable doubt of the charged crime.**

Within the meaning of [the] preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that [Petitioner] committed sexual offenses other than those for which he is on trial.

You must not consider [this] evidence for any [other] purpose unless you find by a preponderance of the evidence that [Petitioner] committed the other sexual offenses.

United States District Court
For the Northern District of California

> If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before [Petitioner] can be found guilty of any crime charged or included or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that [Petitioner] is guilty of that crime.

(Ans., Ex. F at 21–22) (emphasis added). The trial court also gave CALJIC No. 2.50.1, which instructed the jury that "the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses other than those for which he is on trial." (Ans., Ex. A, Vol. 2, Augmentation of Clerk's Transcript at 16.)

Older versions of CALJIC No. 2.50.01 and 2.50.1 were determined to be constitutionally flawed. In 2004, the Ninth Circuit concluded that the "interplay of the two instructions [CALJIC Nos. 2.50.01 and 2.50.1 in their 1999 versions] allowed the jury to find that [the criminal defendant] committed the uncharged sexual offense by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts not found beyond a reasonable doubt, but by a preponderance of the evidence." Gibson v. Ortiz, 387 F.3d 812, 822 (9th Cir. 2004).

Unlike the version read to Petitioner's jury, which was amended in 2001, the version of CALJIC No. 2.50.01 at issue in Gibson did not have the "reasonable doubt" language, thus allowing the two statutes, when read in tandem, to permit a finding of guilt upon a preponderance rather than beyond a reasonable doubt standard. In Gibson, the court stated that had CALJIC No. 2.50.01 appeared without CALJIC No. 2.50.1, the other jury instructions regarding the reasonable doubt standard would have sufficiently protected the Gibson petitioner's rights. Gibson, 387 F.3d at 822. However, because CALJIC No. 2.50.1 links itself thematically and directly to No. 2.50.01, it would permit the jury to find guilt of the charged offenses based on a preponderance standard because No. 2.50.01 in Gibson did not contain the reasonable doubt standard. Id. Unlike the version at issue in Gibson, the version read to Petitioner's jury contained the constitutionally prophylactic reasonable doubt language.

14

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been deprived of due process. See Middleton v. McNeil, 541 U.S. 433, 436 (2004). Any jury instruction that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972).

Turning to the instant action, Petitioner's constitutional objections to CALJIC No. 2.50.01 are without merit. The 2002 version clearly states that Petitioner's guilt on the charged offenses must, consonant with Winship, be established beyond a reasonable doubt. That the instruction permits the use of the preponderance standard in determining whether Petitioner committed uncharged offenses does not reduce the prosecution's Winship burden regarding charged offenses, which, as just stated, CALJIC No. 2.50.01 itself reiterates and reinforces: "if you find by a preponderance of the evidence that [Petitioner] committed a prior sexual offense or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether [Petitioner] has been proved guilty beyond a reasonable doubt of the charged crime." Reading the instruction in tandem with CALJIC No. 2.50.1 does not change the Court's conclusion. In sum, as read to petitioner's jury, CALJIC Nos. 2.50.01 and 2.50.1 sufficiently instructed the jury that it could find petitioner guilty of the charged offenses only upon a showing of proof beyond a reasonable doubt. This claim is DENIED.

//

//

//

15

**B.**     **Unanimity Instruction**

Petitioner claims that the trial court's failure to give a unanimity instruction violated right to due process. (Pet., P. & A. at 11.) Such instruction was needed, Petitioner contends, because "the evidence here posed a real risk jurors would disagree as to whether Counts 6–8 were based on the specific early morning bedroom incidents, or the new generic testimony." (Id. at 11–12.)

The state appellate court summarized the facts underlying Petitioner's claim as follows:

> The prosecutor elected to argue that count 1 was the non-forcible touching when M. was six and watching television. As for the other non-forcible touchings, the prosecutor argued, "Counts 6 through 8. And let me just say there was testimony which supports these charges and more than these charges, but those charges relate to simple child molest, when he gets in bed with her, reached around and fondles her vaginal area, didn't remember whether there was penetration or not. [¶] It relates to any occasion where he would reach and touch her . . . It occurred to her when her mom was eating breakfast and her stepfather is waking her up. [¶] It occurred for her when her mom's taking a shower and he reaches into her pants."

(Ans., Ex. F at 23.) The state appellate court rejected Petitioner's claim, finding that the circumstances did not warrant the giving of a unanimity instruction:

> Here, the evidence supported two or three specific non-forcible lewd acts based on the early morning touchings as well as the generic count 8 discussed above. "[I]n order for the unanimity instruction to make a difference, there must be evidence from which jurors could both accept and reject the occurrence of at least the same number of acts as there are charged crimes. [Citation.]" (People v. Brown (1996) 42 Cal.App.4th 1493, 1502.) In contrast, in cases where the jury is presented with an all-or-nothing choice, a unanimity instruction is unnecessary or, if error, harmless. (People v. Schultz (1987) 192 Cal.App.3d 535, 539.) . . . In light of [Petitioner's] invitation to the jury to find him guilty of all four counts of non-forcible lewd conduct, it is not reasonably probable that there was any disagreement by the jury regarding the factual basis for the convictions in those counts. For the same reason, any error was harmless even under the Chapman standard of harmless error beyond a reasonable doubt.

(Id. at 24–25.)

On this record, Petitioner has not shown that he is entitled to habeas relief on this claim. First, as the prosecutor's above-quoted statement indicates, evidence was presented at trial that the separate counts were tied to specific and distinct, though similar, acts. Rather

16

than having an "all or nothing choice," the jury was free to accept or reject evidence that Petitioner molested his stepdaughter on one, two, or three separate occasions, as the state appellate court found: "the evidence supported two or three specific non-forcible lewd acts based on the early morning touchings as well as the generic count 8 discussed above."

Second, criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. Apodaca v. Oregon, 406 U.S. 404, 410–12 (1972) (rejecting 6th Amendment right to jury trial challenge to 10-2 state jury verdict); Johnson v. Louisiana, 406 U.S. 356, 359–63 (1972) (rejecting due process challenge to 9-3 state jury verdict). Since a criminal defendant in a state prosecution is not entitled to a unanimous verdict at all under the federal Constitution, the state court's determination that an instruction on jury unanimity was unnecessary under state law in the circumstances of the case cannot possibly be considered a violation of federal due process.

Construing Petitioner's claim differently, the issue may be whether due process requires an instruction that the jury agree as to the specific acts that constituted commission of the crimes charged, and not one of unanimous jury verdict. That is, it is a question of whether the Constitution requires that the jury be instructed to agree on which specific act meets the requirements of a specific statutory charge, not what vote of the jury is required.

Such question must be answered in the negative. The Supreme Court has held that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." McKoy v. North Carolina, 494 U.S. 433, 449 (1990) (Blackman, J, concurring); see also Schad v. Arizona, 501 U.S. 624, 631–32 (1991) (rule that jurors not required to agree upon single means of commission of crime, citing McKoy, applies equally to contention they must agree on one of alternative means of satisfying mental state element of crime). Accordingly, this claim is DENIED.

//

//

### C. CALJIC No. 2.21.2

Petitioner claims that the use of CALJIC No.2.21.2 lowered the prosecution's burden to prove Petitioner's guilt beyond a reasonable doubt. (Pet., P. & A. at 12.) The state appellate court rejected this claim on two grounds. First, the appellate court noted that the California Supreme Court had "expressly rejected a similar attack upon this instruction." (Ans., Ex. F at 25.) Second, looking at the instructions as a whole, the appellate court concluded that the trial court had sufficiently instructed the jury on the reasonable doubt standard as to render null any negative effect of CALJIC No. 2.21.2. (Id.)

CALJIC No. 2.21.2, as given to Petitioner's jury, reads as follows: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars." (Ans., Ex. A, Clerk's Augmented Transcript at 11.)

The Ninth Circuit has rejected similar claims regarding CALJIC No. 2.21.2. See Turner v. Calderon, 281 F.3d 851, 865–66 (9th Cir. 2002). "[B]ecause the jury 'remained free to exercise its collective judgment to reject what it did not find trustworthy or plausible,' the instruction could not be applied in a way that challenged the Constitution." Id. at 866 (quoting Cupp v. Naughten, 414 U.S. 141, 149 (1973)).

This Court is bound by the Ninth Circuit's holding in Turner. Accordingly, Petitioner's claim is DENIED.

### 7. Consecutive Terms

Petitioner claims that the trial court's imposition of "full consecutive terms without a specific finding by the jury" violated his Sixth Amendment rights, as those rights are set forth in Blakely v. Washington, 542 U.S. 296 (2004) and Cunningham v. California, 549 U.S. 270 (2007), which are the progeny of Apprendi v. New Jersey, 530 U.S. 466 (2003). (Pet., P. & A. at 14.)

18

<u>Apprendi</u> and its related cases of <u>Blakely</u> and <u>Cunningham</u> do not apply to a trial court's decision to impose concurrent or consecutive sentences. <u>See</u> <u>Oregon v. Ice</u>, 129 S.Ct. 711, 714–15 (2009). As <u>Ice</u> holds, those cases impose constitutional limits on increasing the statutory maximum sentence of a single conviction, and have nothing to say about the imposition of consecutive sentences for convictions on separate charges. Accordingly, this claim is DENIED.

## 8.–9. Sentencing

Petitioner claims that the trial court violated his rights to due process when it imposed (A) mandatory sentences for counts 2–5 and 9–11, and (B) a consecutive, rather than a concurrent, sentence for count 10. (Pet., P. & A. at 15–16.)

### A. Mandatory Sentences

Petitioner claims that the trial court's decision to impose consecutive sentences for counts 2–5 and 9–11 was based on constitutionally inadequate evidence that each charge represented a separate act. (Pet., P. & A. at 15.) Petitioner contends that the testimony describing the criminal events "does not fairly reflect any significant breaks in conduct between offenses affording [P]etitioner an opportunity to reflect on either occasion." (<u>Id.</u>)

The state appellate court summarized the relevant facts as follows:

> At sentencing, the trial court expressed the thought that the risk of recidivism was so great that "There is nothing else for this Court to do but to keep you away from society as long as I possibly can." The court imposed full consecutive terms for the forcible lewd conduct counts because [Petitioner] had time to reflect on each act. The court said it would impose full consecutive terms "on the 288(b) counts, as well as the 269(A)(4) and the 666.6(B), as well as 667.6(C)." The court said it found as aggravating factors that each conviction represented a separate and distinct act of violence, that the acts did not indicate a single period of aberrant behavior, that the victim was particularly vulnerable, and that there was planning involved. The court sentenced [Petitioner] to a prison term of 44 years plus 15 years to life. This was a principal term of six years under count 2; full consecutive six-year mid-terms on the other forcible lewd act counts (counts 3, 4, 5, 9, and 11) pursuant to Penal Code section 667.6, consecutive two-year terms on the non-forcible lewd act counts (counts 1, 6, 7, and 8) and a consecutive indeterminate term of 15 years to life under count 10.

(Ans., Ex. F at 26.)

19

The state appellate court rejected Petitioner's claim, finding that the trial court's decision was supported by the record. Specifically, the trial court "could reasonably conclude that [Petitioner] had the opportunity to pause and reflect between acts during both incidents":

> The record shows that [Petitioner] was reflecting on his actions even as he was committing them. He told Detective Montes that during the towel incident "I was feeling I was going to lose control" and that after he touched M. she wanted him to do more and he told her "Sweetie, I don't want to hurt you, I've told you many times." Discussing the incident on the couch, he said that he stopped short of oral copulation and digital penetration because "I would always stop on my own." [Petitioner's] narrative description of his thoughts during each of these series of acts, despite his refusal to acknowledge the full extent of them and comment that he would have had to have been crazed to commit them, when combined with M.'s testimony about these acts, serve to support a view that [Petitioner] was excruciatingly aware of what he was doing, and reflecting upon each step of his conduct, during the commission of and between each act.

(Ans., Ex. F at 28.)

The record reflects that counts 2–5, 9 and 11 alleged that Petitioner committed forcible lewd acts against the victim, violations of Cal. Pen. Code § 288(b)(1), and Count 10 alleged that Petitioner committed an aggravated sexual assault on the victim, a violation of § 269(a)(4). The sentences for these counts were all within statutory limits, and none of the sentences were beyond the statutory maximum. See Ans., Ex. B, Vol. 8 at 1766; See Cal. Pen. Code §§ 288(b)(1) & 269(a)(4).

Case law directs that state sentencing courts must be accorded wide latitude in their decisions as to punishment. See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987). The Supreme Court has held that "our tradition of deferring to state legislatures in making and implementing" sentencing policy decisions is "longstanding." Ewing v. California, 538 U.S. 11, 24 (2003). Federal habeas relief is not justified even if a state court misapplies its own sentencing laws, unless there is a showing of fundamental unfairness. Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Because of this tradition of deference, a federal court may not review a state sentence that is within statutory limits. See Ewing, 538 U.S. at 24.

1   There are exceptions under the Due Process Clause and the Eighth Amendment,

2   however.[2]  A federal court may grant relief from a state sentence imposed in violation of due

3   process; for example, if a state trial judge imposed a sentence in excess of state law, see

4   Walker, 850 F.2d at 476, or enhanced a sentence based on materially false or unreliable

5   information or based on a conviction infected by constitutional error, see U.S. v. Hanna, 49

6   F.3d 572, 577 (9th Cir. 1995).

7   Applying these legal principles to the instant matter, the Court concludes that

8   Petitioner's claims are without merit.  Firstly, with few exceptions, a federal court cannot

9   grant a habeas writ for violations of state law or for alleged error in the interpretation or

10  application of state law, such as Petitioner alleges here.  Estelle v. McGuire, 502 U.S. 62,

11  67–68 (1991).  No exceptions to this rule are present here.  Secondly, the sentences complied

12  with due process.  Specifically, the sentences were within statutory limits.  Also, because

13  none of the sentences were not in excess of the statutory maximum, none of the sentences

14  violated any Sixth Amendment rights, such as those articulated in Apprendi.  Thirdly, even if

15  there was a sentencing error, such error was harmless.  The record supports the trial court's

16  determination that Petitioner had an opportunity to reflect on his acts.  Evidence was

17  presented at trial — including Petitioner's own statements — that the acts with which

18  Petitioner was charged occurred on separate days and over a number of years.  Such evidence

19  supports the trial court's determination that these acts were separate and distinct.  Finally,

20  Petitioner's claim that the trial court's decision that the terms were mandatory is without

21  merit.  As stated above, this Court cannot grant relief for errors of state law, even if state law

22  is misapplied.  Accordingly, Petitioner's claim is DENIED.

23  **B.      Consecutive Sentence**

24  Petitioner claims that the trial court violated his rights to federal due process and his

25  state statutory rights by imposing a consecutive, rather than a concurrent, sentence for Count

26  10.  (Pet., P. & A. at 16.)  "[T]he record," Petitioner contends, "affirmatively demonstrates

27  the trial court misunderstood the scope of its sentencing discretion."  (Id. at 17.)  The state

28

21

appellate court rejected this claim:

> [Petitioner] contends, "The court erroneously failed to exercise discretion to impose a concurrent term on the indeterminate count, denying [Petitioner] due process of law."  In support of this argument, [Petitioner] states "the prosecution's sentencing memorandum and the probation report both erroneously state the ISL term had to be imposed consecutively by law; the latter appears to suggest a consecutive ISL term was mandatory under section 667.6.  These errors were never corrected[.]"  This argument ignores the fact that defense counsel specifically argued to the court that it should impose a concurrent sentence for that count.  When this is considered with the court's expression of an intention to remove [Petitioner] from society as long as possible, the record does not affirmatively demonstrate that the court misunderstood the scope of its sentencing discretion when it chose to order the indeterminate term to be served consecutively.

(Ans., Ex. F at 29.)

Petitioner has not shown that he is entitled to habeas relief on this claim.  First, his claims regarding alleged violations of state sentencing laws are unremediable here, even if the laws were, as Petitioner alleges, misapplied.  Second, Petitioner has not cited any authority to show that his federal constitutional rights were violated by the imposition of a consecutive sentence.  Specifically, due process and the Sixth Amendment have been satisfied because the sentence was within statutory limitations, and was not beyond the statutory maximum.   Accordingly, Petitioner's claim is DENIED.

**10.    Alleged Cumulative Error**

Petitioner claims that the cumulative effect of various trial errors resulted in prejudice. (Pet., P. & A. at 17–18.)

Although no single trial error is sufficiently prejudicial to warrant the granting of relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003).  However, where no single constitutional error exists, there can be no cumulative error.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

Petitioner has not shown that there were any constitutional errors at trial. Accordingly, the Court concludes that Petitioner has not shown that there was cumulative error.  On this basis, Petitioner's claim is DENIED.

22

**CONCLUSION**

The Court concludes that the state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED**.

DATED:   February 9, 2010

MARILYN HALL PATEL
United States District Judge

23

**NOTES**

1.  The eleven counts included four counts of nonforcible lewd and lascivious conduct, see Cal. Pen. Code § 288(a), six counts of forcible lewd and lascivious conduct, see id. § 288(b), and one count of aggravated oral copulation of a child, see id. § 269(a)(4). According to the jury's verdict, the eleven counts were as follows:

      Count 1, § 288(a):  nonforcible lewd & lascivious act committed against a person under 14.
      Count 2, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.
      Count 3, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.
      Count 4, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.
      Count 5, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.
      Count 6, § 288(a):  nonforcible lewd & lascivious act against a person under 14.
      Count 7, § 288(a):  nonforcible lewd & lascivious act against a person under 14.
      Count 8, § 288(a):  nonforcible lewd & lascivious act against a person under 14.
      Count 9, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.
      Count 10, § 269(a)(4):  aggravated oral copulation of a child.
      Count 11, § 288(b)(1):  forcible lewd & lascivious act committed against a person under 14.

2.  Petitioner has not raised an Eighth Amendment claim.